**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Eric T. Roth, *et al.*,

      Plaintiffs,

    v.                    Case No. 1:09cv253

Henry Guzman, *et al.*,           Judge Michael R. Barrett

      Defendants.

## OPINION & ORDER

    This matter is before the Court upon Defendant Henry Guzman, Mike Rankin's Motion for Judgment on the Pleadings (Doc. 12) and Amended Motion for Judgment on the Pleadings (Doc. 14). Plaintiffs filed Response in Opposition (Doc. 15) and Defendants filed a Reply (Doc. 16). The parties have filed a number of supplemental pleadings. (Docs. 33, 35, 36, 40, 41.) In addition, the Court held oral argument on the motions. (Doc. 37.)

    Because the first-filed Motion for Judgment on the Pleadings is directed to the original Complaint (Doc. 12), and the Amended Motion for Judgment on the Pleadings (Doc. 14) is directed to the Amended Complaint, the first Motion is DENIED as MOOT.

**I.   BACKGROUND**

    Based on the allegations in the Amended Complaint (Doc. 10), Plaintiffs and the Class members are licensed drivers in the State of Ohio.[1] The Ohio Department of Public

---

[1]The proposed class consists of:

All individuals who had an Ohio drivers license anytime from April 8, 2004 forward, whose personal information, as defined by 18 U.S.C. § 2725(3), was disclosed by the Ohio Department of Public Safety, the Ohio Bureau of Motor Vehicles, or any agent, officer, employee, or contractor, thereof, to Shadowsoft or PublicData, or any

Safety and the Ohio Bureau of Motor Vehicles maintain personal information pertaining to each licensed driver.  Defendants are Henry Guzman, the Director of the Ohio Department of Public Safety, and Mike Rankin, the Registrar of the Ohio Bureau of Motor Vehicles. Plaintiffs' claims are brought against Defendants in their individual capacity only.  Plaintiffs allege that Defendants unlawfully disclosed, sold, or disseminated the personal information to a corporate entity, Shadowsoft, Inc., in violation of the Federal Driver's Privacy Protection Act ("DPPA")[2] and 42 U.S.C. § 1983.

Specifically, Shadowsoft filed a "Record Request" seeking public records for use in the normal course of business to verify or correct the accuracy of personal information. (Doc. 13, Ex. A.)[3]  The OBMV then entered into an "Agreement for the Sale of Information" with Shadowsoft to disclose information contained in motor vehicle records maintained by the State of Ohio.  (Id., Ex. B.)  In the Agreement, Shadowsoft agrees to abide by the terms of both federal and state law.  (Id.)

Plaintiffs allege further that after obtaining the information from the OBMV,

_____

agent of Shadowsoft or PublicData.

[2]Section 2724(a) of the DPPA establishes a civil cause of action for violation of the statute:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

[3]Because these documents are attached to Defendants' Answer, they do not run afoul of Rule 12(d) of the Federal Rules of Civil Procedure, which provides that if on a motion pursuant to Rule 12(c) matters outside the pleadings are considered, the motion must be treated as one for summary judgment under Rule 56.

Shadowsoft provided this information to The Source for Public Data, LP ("PublicData"), who in turn published the information on its website, www.publicdata.com.

## II.   ANALYSIS

### A.   Standard of Review

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.*, *quoting JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, *i.e.*, more than merely possible.  *Id.*, *citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 556 (2007).

### B.   Standing

Standing is a jurisdictional matter and is a threshold question to be resolved by the court before a court may address any substantive issues.  *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987).

"In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the

-3-

Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1148 (2009). To establish standing under Article III, a plaintiff must show: (1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; (2) that the injury is caused by the defendant's conduct; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants argue that Plaintiffs lack standing because they have not claimed that they suffered any adverse effects from the disclosure of their personal information. However, the issue of standing is not to be confused with proof of damages. *See Bell v. Hood*, 327 U.S. 678, 682 (1946), ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").

Plaintiffs allege that Defendants sold their personal information in violation of the DPPA. The plain language of the DPPA grants individuals a right not to have information from their state motor vehicle record obtained for a purpose not permitted under the DPPA. *See* 18 U.S.C. § 2724(a) (creating a private cause of action against a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under" the DPPA"). Therefore, the Court finds that Plaintiffs have sufficiently alleged an injury in fact based on the disclosure of their personal information for a purpose not permitted under the DPPA.

-4-

**C.** **Sovereign immunity**

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States."  The Sixth Circuit has not "spoken with one voice on whether [a court] must, or whether [a court] may, resolve a sovereign-immunity defense before addressing the merits."  *Nair v. Oakland County Community Mental Health Authority*, 443 F .3d 469, 474 (6th Cir. 2006).  Because Defendants have raised sovereign immunity as a threshold issue, the Court will address the sovereign-immunity defense before addressing the merits.

The Eleventh Amendment does not preclude suits against state officials in their individual capacities for damages.  *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) (holding that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983 and that the Eleventh Amendment did not bar suits against such persons).  As the Sixth Circuit has explained:

> A claim for damages against individual defendants seeking to impose individual liability for action taken under color of state law is not prohibited. Only if the purpose of a lawsuit is to coerce a state action by the official sued and to impose liability which "*must* be paid from public funds" does the eleventh amendment apply.

*Wilson v. Beebe*, 770 F.2d 578, 588 (6th Cir.1985) (emphasis in original), *quoting Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Alden v. Maine*, 527 U.S. 706, 756 (1999) ("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.").

Furthermore, the Sixth Circuit has held that where indemnification of an official is not required, the suit remains against the state official in his or her individual capacity and the Eleventh Amendment does not serve as a bar to suit.  *Wilson*, 770 F.2d at 587-88; *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 317 n.10 (1990) ("Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damages awards imposed on them for actions taken in the course of their employment.").

The Court finds that Plaintiffs' claims for damages are not barred because the claims are brought against Defendants in their individual capacity for wrongful conduct fairly attributable to Defendants.

In addition, sovereign immunity does not apply when a plaintiff seeks declaratory or injunctive relief against a public official that is "'properly characterized as prospective.'" *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003), *quoting Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002); *see also Edelman*, 415 U.S. at 664-65 (explaining Eleventh Amendment does not bar injunctive relief which is a prospective mandate to conform to some standard rather than retroactive compensation for past injuries).  Therefore, Plaintiffs are not barred from seeking the injunctive relief prayed for in the Amended Complaint: an order enjoining Defendants from violating the Federal Driver's Privacy Protection Act now and in the future; an order directing the Defendants to retrieve and/or take steps to remove the personal information of the putative class from public access.

Therefore, Plaintiffs claims against Defendants Guzman and Rankin are not barred by the Eleventh Amendment.

-6-

D.    **Section 1983**

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  However, "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law."  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005).  Section 1983 is "not available to enforce a violation of a federal statute 'where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983.'"  *Suter v. Artist M.*, 503 U.S. 347, 355-56 (1992), *quoting Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423 (1987).

Defendants argue that the DPPA is not enforceable through section 1983.  Federal courts addressing this issue have come to different conclusions.

In *Collier v. Dickinson*, 477 F.3d 1306 (11th Cir. 2007), the court held that the relief offered by the DPPA was complementary to the relief available under section 1983.  *Id.* at 1311.  The court reasoned that the DPPA "did not create so many specific statutory remedies for individual enforcement" as to supplant section 1983, and that "[t]here is nothing in the statute to suggest that Congress intended to exclude Section 1983 relief."  *Id.*

Likewise, in *Arrington v. Richardson*, 660 F.Supp.2d 1024, 1037 (N.D.Iowa 2009), the court concluded that although the plaintiff's section 1983 claim may be redundant, the plaintiff was not barred from pursing both a section 1983 claim and a claim under the DPPA.

-7-

In contrast, in *Roberts v. Source for Public Data*, 606 F.Supp.2d 1042, 1046 (W.D.Mo. 2008), the court concluded that given the comprehensive remedial scheme of the DPPA, Congress intended that the DPPA would be the exclusive remedy for violations, and preclude claims under section 1983.

Finally, in *Kraege v. Busalacchi*, 2009 WL 3681863, *6 (W.D.Wis. Nov. 4, 2009) (slip op.), the court concluded that the plaintiffs' section 1983 claim was barred because the DPPA has a more restrictive private remedy.

There are no decisions from within this Circuit addressing this issue and the Court of Appeals for the Sixth Circuit has not addressed the issue.  However, in *City of Rancho Palos Verdes v. Abrams*, the Supreme Court set forth the applicable framework to determine whether a federal statute can be enforced through section 1983.  The Court explained to sustain a section 1983 action, the plaintiff must first demonstrate that the federal statute creates an individually enforceable right.  544 U.S. at 120.  To make this determination, a court must look at three factors.  *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  First, Congress must have intended that the provision in question benefit the plaintiff.  *Id.* at 340.  "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence."  *Id.* at 340-41.  Third, "the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."  *Id.* at 341.

Defendants do not dispute that the DPPA created a federal right.  Moreover, the Eleventh Circuit in *Collier v. Dickinson* found "no hesitancy in finding that the plain

-8-

language of the DPPA clearly satisfies all three conditions" to make it enforceable under

section 1983:

> First, the enforcement provisions of the statute unambiguously focus on
> benefiting individuals, rather than focusing on benefiting a group or making
> system-wide changes.  The statute makes the official who disobeys the law
> "liable to the individual to whom the information pertains, who may bring a
> civil action in a United States district court."   18 U.S.C.A. § 2724(a)
> (emphasis added).  Second, it can hardly be said that the protections offered
> by the statute are "so vague and amorphous that its enforcement would
> strain judicial competence."  *Blessing*, 520 U.S. at 340-41 (quotation and
> citation omitted).  Rather, the protections offered by the statute are clear and
> specific.  The language of Sections 2721(b)(11)-(13) unambiguously requires
> the consent of individuals before their motor vehicle record information may
> be released, and Section 2724(a) unambiguously states that an individual
> who knowingly violates the statute shall be liable to the individuals to whom
> the information pertains in an action in federal district court.  The language
> sets forth the contours and limits of the right clearly, and the right is easily
> enforceable by courts.  Third, the statutory language is mandatory in that it
> requires that the states obtain the consent of the persons whose information
> is to be disseminated.

477 F.3d at 1310-311.   Likewise, this Court concludes that the DPPA creates an

individually enforceable right.

Once it has been shown that the federal statute creates an individually enforceable

right, there is a rebuttable presumption that the right is enforceable under section 1983.

*Rancho Palos Verdes*, 544 U.S. at 120, *citing Blessing*, 520 U.S. at 341.  However, the

defendant may defeat this presumption by demonstrating that Congress did not intend that

remedy for a newly created right.  *Id.*  Congressional intent may be found directly in the

statute creating the right, or inferred from the statute's creation of a "'comprehensive

enforcement scheme that is incompatible with individual enforcement under § 1983.'"  *Id.*

at 120, *quoting Blessing*, 520 U.S. at 341.  Moreover, "[t]he provision of an express, private

means of redress in the statute itself is ordinarily an indication that Congress did not intend

to leave open a more expansive remedy under § 1983." *Id.* at 121.  However, "[t]he ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* at 122.

Defendants point out that the DPPA provides for both civil and criminal penalties, and enforcement may be through private citizens or the United States Attorney General. Defendants argue that given this comprehensive remedial scheme, this Court must presume that Congress intended the DPPA's enforcement scheme to be the exclusive remedy.

This Court disagrees, and finds that reasoning and result reached in *Arrington v. Richardson*, 660 F.Supp.2d 1024, 1037 (N.D. Iowa 2009) persuasive on this issue.  After making a detailed comparison of the remedies available under section 1983 and the DPPA, the court in *Arrington* concluded that the list of remedies under the DPPA was more extensive than that provided under section 1983.  *Id.* at 1033.  However, the court stated that it was unclear how this extensive list of remedies is incompatible with individual enforcement under section 1983.  *Id.*  The court recognized that the district court in *Roberts v. Source for Public Data*, concluded that this comprehensive scheme created the inference that Congress intended the DPPA's enforcement scheme would be the exclusive remedy for violations.  *Id.* at 1034.  Nevertheless, the court noted the Supreme Court's statement in *Rancho Palos Verdes*, that the ordinary inference that the remedy provided in the statute is exclusive can be overcome by "textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983."  *Id.*  After applying this

-10-

principle, the *Arrington* court concluded that the DPPA's remedial scheme complements the relief available under section 1983:

> First, the DPPA's remedies mirror § 1983's remedies in some respects, and are broader in other respects. Second, the DPPA does not contain preconditions to filing suit in federal district court. Third, the court finds persuasive the Eleventh Circuit Court of Appeals's reasoning in *Collier*. *See Collier*, 477 F.3d at 1311 ("Rather than conflicting, we find the relief offered by the DPPA and [§ ] 1983 to be complementary.").

*Id.* at 1035.

The *Arrington* court found this conclusion consistent with Supreme Court precedent in which the Court found that statutory enactments precluded claims under section 1983. *Id.*, *citing Fitzgerald v. Barnstable School Committee*, 129 S.Ct. 788, 793-95 (2009). As the *Arrington* court noted, the Supreme Court found that section 1983 claims were barred where "the statutes at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit." *Id.*, *citing* 129 S.Ct. 795 ("Offering plaintiffs a direct route to court via § 1983 would have circumvented these procedures and given plaintiffs access to tangible benefits-such as damages, attorney's fees, and costs-that were unavailable under the statutes."). As the *Arrington* court noted, the DPPA includes no such procedures.

Moreover, as the *Arrington* court was careful to point out, both section 1983 and the DPPA make available actual damages, punitive damages, attorneys' fees, costs, and equitable relief. The *Arrington* court noted that the Supreme Court had barred section 1983 claims where the statutory enactments excluded certain remedies otherwise available under section 1983. *Id.* at 1035-1036, *citing* 129 S.Ct. 796 (explaining that "the existence of a more restrictive private remedy for statutory violations has been the dividing line

between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not.").

Like the court in *Arrington*, this Court finds that Defendants have not met their burden of proving that Congress has withdrawn section 1983 as a remedy for the violation of the federal right found in the DPPA.  Therefore, Plaintiffs may proceed with their claim under section 1983 in addition to their claim under the DPPA.

### E.    Qualified immunity

The doctrine of qualified immunity protects government officials performing discretionary functions from individual liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978).  While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.  *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

When a defendant raises the issue of qualified immunity, a court must decide as a preliminary matter, whether the defendant is being sued for "discretionary" acts as opposed to "ministerial" ones.  "It is well established that only officials performing discretionary, as opposed to ministerial, functions, are entitled to qualified immunity."  *Perez v. Oakland County*, 466 F.3d 416, 429 (6th Cir. 2006), *citing Davis v. Holly,* 835 F.2d 1175, 1178 (6th Cir. 1987).  Discretionary acts involve "'significant decision-making that entails personal

deliberation, decision and judgment.'" *Davis,* 835 F.2d at 1178, *quoting Ross v. Consumers Power Co.,* 363 N.W.2d 641, 647 (Mich. 1984). By contrast, ministerial acts involve "'the execution of or implementation of a decision and entail only minor decision-making.'" *Id.* Defendants state that their acts were discretionary in that they developed and implemented policy decisions regulating the disclosure of information contained in motor vehicle records in compliance with the DPPA, Ohio Revised Code § 4501.27(B)(2)(c) and Ohio's public records law. Plaintiffs do not challenge this assertion.

The Supreme Court, in *Saucier v. Katz*, set forth a two-pronged test to determine whether a defendant is entitled to qualified immunity.[4] First, a court must consider whether the facts of the case, viewed in the light most favorable to the plaintiff, show the officer's conduct violated a statutory or constitutional right. 533 U.S. 194, 201 (2001). If so, the court must then decide "whether the right was clearly established." *Id.* Although *Saucier* mandated that these questions be addressed in order, that requirement has since been relaxed. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

In this instance, the Court finds that it is appropriate to first address whether Defendants' alleged conduct violated a statutory right.

---

[4]While the majority of caselaw applying the qualified immunity doctrine is within the context of constitutional violations, the Sixth Circuit has made it clear that the Supreme Court intended to apply qualified immunity to statutory violations. *Blake v. Wright*, 179 F.3d 1003, 1013 (6th Cir. 1999) ("We fail to see the logic of providing a defense of qualified immunity to protect public officials from personal liability when they violate constitutional rights that are not clearly established and deny them qualified immunity when they violate statutory rights that similarly are not clearly established.").

-13-

Defendants argue that they did not violate the DPPA because both the DPPA and Ohio law permit disclosures of information for use in the normal course of business.

The DPPA provides in relevant part:

A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:

(1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; . . .

18 U.S.C. § 2721(a).  Subsection (b) enumerates fourteen "permissible uses." Defendants rely upon the third permissible use, which provides:

For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only--

(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

18 U.S.C. § 2721(b)(3).  The statute provides further that "an authorized recipient of personal information  . . . may resell or redisclose the information only for a use permitted under subsection (b)  . . ."  18 U.S.C. § 2721(c).  However, "[a]ny authorized recipient . . . that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request."  *Id.*

Plaintiffs allege in their Amended Complaint that their personal information was

-14-

disclosed for a purpose not permitted under the DPPA. Plaintiffs argue that Shadowsoft was not an authorized recipient under the statute. In response to Defendants' Motion, Plaintiffs allege that Shadowsoft falsely represented to Defendants that they would only use the disclosed information "to verify the accuracy of personal information submitted by the individual" to Shadowsoft or "to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual." There is also an inference in the Amended Complaint that Shadowsoft falsely obtained the information from Defendants and then disclosed the information for a purpose not permitted under the DPPA. Plaintiffs allege:

> Shadowsoft unlawfully acquired a large database of information from ODPS and/or OBMV.

> The information database acquired by Shadowsoft from ODPS and/or OBMV contained "personal information" (as defined by the DPPA, 18 U.S.C. §§ 2721, et seq.) belonging to hundreds of thousands of licensed drivers in the State of Ohio.

> Upon information and belief, Shadowsoft transferred the database *in totum* to PublicData.

> PublicData then made the personal information belonging to those individuals, unlawfully acquired from ODPS and/or OBMV, available for search and sale on its website, www.publicdata.com.

(Doc. 10, ¶¶ 16-19.) Based on these allegations, which the Court must view in a light most favorable to Plaintiffs, it is plausible that the information disclosed by Defendants was not actually disclosed for a permissible use.

In so finding, the Court rejects Defendants' arguments that they cannot be held

liable for the acts of Shadowsoft and PublicData.[5]  While Plaintiffs may have a potential claim against Shadowsoft and PublicData for disclosing their personal information for a purpose not permitted under the DPPA, the existence of such a claim does nothing to alter the independent claim that Plaintiffs have against Defendants based on the allegation that Defendants disclosed information for a purpose not permitted under the DPPA.

Based on the foregoing, the Court concludes that Plaintiffs have plead "sufficient factual matter" to render plausible Plaintiffs' claim that Defendants disclosed information for a purpose not permitted under the DPPA.

However, to state a violation under the DPPA, Plaintiffs must also sufficiently allege that Defendants' disclosure of the information was done knowingly.  The DPPA states "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a).

The only two district courts which have analyzed this provision have both concluded that the term "knowingly" only modifies the phrase "obtains, discloses, or uses personal information," and does not modify the phrase "for a purpose not permitted under this Chapter." *Rios v. Direct Mail Express, Inc.*, 435 F.Supp.2d 1199, 1205 (S.D.Fla. 2006); *Pichler v. UNITE*, 228 F.R.D. 230, 241-42 (E.D.Pa. 2005).  Consequently, these courts have held that a plaintiff is not required to plead or prove that the defendant knew that it was acting in a manner not permitted under the DPPA.  This Court agrees, and finds that

---

[5]The Court notes that Defendants do not dispute that Shadowsoft and PublicData disclosed Plaintiffs' information for a purpose not permitted under the DPPA.

in the Amended Complaint Plaintiffs have sufficiently alleged that Defendants knowingly disclosed personal information:

> The individual Defendants, acting under the color of state law and as agents of ODPS and/or OBMV, knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in disseminating the personal information, maintained by ODPS and/or OBMV, but belonging to Plaintiffs and the Class members, to Shadowsoft and PublicData.

(Doc. 10, ¶ 20.)  Moreover, the Record Request from Shadowsoft and the Agreement between Shadowsoft and ODPS demonstrate that Defendants were aware that the information was being disclosed to Shadowsoft.  Therefore, the Court concludes that under the first prong of *Saucier v. Katz*, Plaintiffs have adequately alleged that Defendants' conduct violated a statutory right.

The Court must now decide whether the right was clearly established under the second prong of *Saucier v. Katz*.  A right is clearly established:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002), *citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In the Sixth Circuit, a right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged  violation occurred.  *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009), *citing Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996).  The Court notes that there is no decision by the Supreme Court, the Sixth Circuit

Court of Appeals, or the Ohio Supreme Court authoritatively deciding the issues raised by Plaintiffs' alleged violations of the DPPA.

"Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *quoting Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

In *Collier v. Dickinson*, the Eleventh Circuit Court of Appeals found that "[t]he words of the DPPA alone are 'specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity.' " 477 F.3d at 1311-312 (internal citations omitted). Relying on *Collier*, the district court for the Western District of Missouri in *Roberts* found that "[t]he plain language of the DPPA gave [the defendant] sufficient notice that the disclosures he is alleged to have made were in violation of Plaintiffs' rights." 606 F.Supp.2d at 1048.

This Court finds the rationale of these courts persuasive. There is nothing ambiguous about the permitted uses found in 18 U.S.C. § 2721(b). The enforcement provision of the DPPA makes it clear that an individual has a right to be free from disclosures which are for a purpose not permitted under the statute. *See* 18 U.S.C. § 2724 (stating that "[a] person who knowingly  . . . discloses . . . personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains . . .). Moreover, even though the compliance with the DPPA is akin to a "generally applicable principle," both the Record Request and

-18-

the Agreement between Shadowsoft and the ODPS demonstrate that it was clear that the provisions of the DPPA were applicable to this particular disclosure of personal information.

Defendants argue that it was reasonable to disclose the information to Shadowsoft because the disclosure was authorized under Ohio law:

> (A) Except as provided in division (B) of this section, on and after September 13, 1997, the registrar of motor vehicles, and any employee or contractor of the bureau of motor vehicles, shall not knowingly disclose or otherwise make available to any person or entity any personal information about an individual that the bureau obtained in connection with a motor vehicle record.
>
> (B)(1) On and after September 13, 1997, the registrar, or an employee or contractor of the bureau of motor vehicles, shall disclose personal information, other than sensitive personal information, about an individual that the bureau obtained in connection with a motor vehicle record, for use in connection with any of the following matters to carry out the purposes of any specified federal automobile-related act:
>
>  . . .
>
> (c) For use in the normal course of business by a legitimate business or an agent, employee, or contractor of a legitimate business, but only for one of the following purposes:
>
> (i) To verify the accuracy of personal information submitted to the business, agent, employee, or contractor by an individual;
>
> (ii) If personal information submitted to the business, agent, employee, or contractor by an individual is incorrect or no longer is correct, to obtain the correct information, but only for the purpose of preventing fraud, by pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

Ohio Rev. Code § 4501.27.  The Court notes that the Sixth Circuit has held that in the absence of Supreme Court or Sixth Circuit precedent to direct an officer's conduct it is objectively reasonable for the officer to rely on presumptively constitutional state law. *Cope v. Heltsley*, 128 F.3d 452, 460 (6th Cir. 1997).  However, the language of section 4501.27 of the Ohio Revised Code mirrors the language of the DPPA.  There is nothing

-19-

in the provision which is ambiguous or contradicts the prohibitions found in the DPPA. Therefore, the Court concludes that a reasonable official would have understood that a disclosure of information for a purpose other than one permitted by the DPPA would violate the DPPA.

Nevertheless, Defendants argue that the DPPA does not require that a state department of motor vehicles act as an insurer of an applicant's self-proclaimed declaration. Defendants characterize the OBMV as a mere a "gatekeeper" of information. The Court rejects this notion. While Defendants may be properly characterized as gatekeepers, this does not mean that they may forfeit this role entirely and adopt without question the representations of entities such as Shadowsoft who make requests for personal information. The Court finds the following discussion applicable, even though it is outside the context of the DPPA:

> Qualified immunity is intended to allow officials to render intelligent decisions even though they may, upon further reflection, be deemed to have been erroneous. It is not intended to allow individual officers to abdicate their decision-making obligations in blind reliance on state statutes. This is especially true in this instance where the officers involved, unlike police officers who frequently have little rule-making authority, are endowed with independent policy-making authority and have an obligation to make reasoned decisions with respect to programs and policies which they promulgate, regardless of whether those programs and policies are promulgated in accordance with State law.

*F. Buddie Contracting, Ltd. v. Cuyahoga Community College Dist.*, 31 F.Supp.2d 584, 589-590 (N.D.Ohio 1998) (finding that officials were not entitled to qualified immunity where there was evidence that affirmative action policy was unconstitutional even though the policy was enacted in compliance with state law).

In this instance, those with policy-making authority have made no effort ensure that

requests for information are legitimate. Based on the allegations before the Court, Defendants take any request at face value and without any regard to the accuracy of the information. The Court notes that while the Record Request included places for Shadowsoft to provide its tax identification number, vendor number, professional license number, and license, Shadowsoft never completed this part of the form. Despite this lack of information, Defendants granted Shadowsoft's request for information. This indicates to the Court that Defendants proceeded with "blind reliance" on any request made. While Defendants place value in the Agreement between ODPS and Shadowsoft, the Court finds reliance on such an agreement at best naive. By simply visiting the PublicData website, Defendants would have discovered that just as Plaintiffs allege, the information Defendants were providing was available to anyone with a credit card.

Another district court has found the same allegations sufficient to support a claim under the DPPA. In *Welch v. Theodorides-Bustle*, No. 4:09cv302 (N.D. Fla. January 5, 2010) (slip op.) the plaintiff asserted that officials of the Florida Department of Highway Safety and Motor Vehicles violated the DPPA by disclosing personal information to Shadowsoft. The Court explained:

> In their motions to dismiss, the defendants do not deny that the plaintiff's "personal information" has been made available on the internet. The defendants do not deny that an internet user can access the information for any or no reason–or on a whim. The defendants do not deny that making the information available in this manner violates the Driver's Privacy Protection Act.
>
> The defendants say, though, that they made the information available only for a lawful purpose. They seem to assert that the very fact that they are driver's-license officials, or that they have the authority to disclose the information for a permissible purpose, means that their disclosure constituted "use" of the information by a "government agency . . . in carrying out its

functions," *id.* § 2721(b)(1), regardless of whether the actual disclosure was otherwise for a proper purpose. That is not so, if *any* disclosure by a public official was automatically proper, there could never be a claim under the Act against a public official.

This Court finds this reasoning persuasive and concludes that based on the foregoing, it would have been sufficiently clear that the disclosure of information to Shadowsoft was not for a permissible purpose, and a reasonable official would understand that what he or she is doing violates the DPPA. *See Harlow*, 457 U.S. at 818-19 (explaining that the question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendants, but rather turns on the "objective legal reasonableness" of the action). Therefore, Defendants are not entitled to qualified immunity.

**F.    Failure to state claim**

Defendants argue that Plaintiffs have failed to state a claim under the DPPA. Because this argument was addressed and rejected as part of the Court's qualified immunity analysis, the Court finds it unnecessary to repeat the same here. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

**III.    CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that:

1.    Defendant Henry Guzman, Mike Rankin's Motion for Judgment on the Pleadings (Doc. 12) is **DENIED as MOOT**; and

-22-

2.      Defendants' Amended Motion for Judgment on the Pleadings (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

                                         _____*/s/ Michael R. Barrett*_____
                                         Michael R. Barrett, Judge
                                         United States District Court